COLUMBIA PICTURES CORPORATION, a New York corporation, Plaintiff,

v.

CITY OF CHICAGO, a Municipal corporation, Richard J. Daley and Timothy J. O'Connor, Defendants.

No. 59 C 1058.

United States District Court
N. D. Illinois, E. D.

July 8, 1959.

Nelson, Boodell & Will, Chicago, Ill., for plaintiff.

John C. Melaniphy, Corp. Counsel, Chicago, Ill., for defendant.

MINER, District Judge.

The Municipal Code of the City of Chicago (Chapter 155) requires the exhibitor of a motion picture to secure a permit from the commissioner of police before public exhibition of the film. Section 155-1 constitutes it a misdemeanor for any person to exhibit a picture without a prior permit. Section 155-2 requires, inter alia, an application in writing. Section 155-4 sets forth the following criteria concerning the grounds for denial of an exhibition permit:

"If a picture or series of pictures, for the showing or exhibition of which an application for a permit is made, is immoral or obscene, or portrays depravity, criminality, or lack of virtue of a class of citizens of any race, color, creed, or religion and exposes them to contempt, derision, or obloquy, or tends to produce a breach of the peace or riots, or purports to represent any hanging, lynching or burning of a human being, it shall be the duty of the commissioner of police to refuse such permit; otherwise it shall be his duty to grant such permit."

This Section also provides that an applicant may appeal to the Mayor from a refusal to grant the permit, and that the appeal "shall be presented in the same manner as the original application to the commissioner of police".

Columbia Pictures Corporation, a New York corporation with its principal offices in New York City, is the distributor of a motion picture entitled "Anatomy of a Murder". The film is an adaptation of a novel written by John D. Voelker, an Associate Justice of the Supreme Court for the State of Michigan, who wrote the book under the pen name of Robert Traver.

The Columbia Pictures Corporation applied to the Commissioner of Police of the City of Chicago for a permit in accordance with Chapter 155. The parties have stipulated in open court that the

Court may proceed as if all procedural requirements and administrative processes of the ordinance had been fully complied with. The Commissioner of Police refused to issue the permit, and the Mayor of the City of Chicago approved that action.

Plaintiff, Columbia Pictures Corporation, has joined as defendants the City of Chicago; Richard J. Daley, Mayor of the City of Chicago; and Timothy J. O'Connor, Commissioner of Police. The complaint asks for an order directing the defendants forthwith to issue to plaintiff the required permit and for an order enjoining defendants from preventing plaintiff's exhibition of the film in the City of Chicago.

The parties have stipulated that this Court has jurisdiction over the subject matter of the suit under Title 28 U.S. Code, §§ 1331 and 1332. It was further stipulated that the plaintiff does not challenge the constitutionality of the above ordinance but claims that the film is not of the type proscribed by the ordinance. The plaintiff contends that the action of the individual defendants in denying the requested permit are beyond the power of decision vested in them by the ordinance and that their actions infringe upon and deny plaintiff its rights to freedom of speech, freedom of the press, and freedom to engage in lawful business activities in Chicago as guaranteed by the First and Fourteenth Amendments to the Constitution.

The Court on Tuesday, July 7, 1959, viewed the film in its entirety, and has evaluated it completely in the light of the applicable ordinance, the cases which have construed it, and the decisions which have set forth the criteria by which its standards must be applied.

The rule generally followed in the Federal and the State Courts is that a book or play is to be judged as a whole in terms of its effect on the average, normal reader or viewer. That does not necessarily protect obscene matter unless its diction or episodes are so slight or infrequent as not to convey an obscene savor to the entire book or play.

The Court finds that while the City of Chicago has the power to censor films and to deny a permit to those which are obscene and immoral, the film in question does not fall within the restrictive provisions of the ordinance. Taken as a whole, the film cannot be placed in the category of the obscene or immoral, because its dominant effect does not tend to excite sexual passion or undermine public morals. The infrequent mention of "rape" or "contraceptive" in the film is not likely to so much arouse the salacity of the normal and average viewer as to outweigh its artistic and expert presentation. In fact, the criminal assault upon the murderer's wife has the effect of arousing pity and revulsion rather than desire or sexual impure thoughts. Furthermore, under present day standards, neither of these two words offend the common conscience of the general public. American Civil Liberties Union v. City of Chicago, 3 Ill.2d 334, 121 N.E.2d 585; Times Film Corporation v. City of Chicago, 355 U.S. 35, 78 S.Ct. 115, 2 L.Ed.2d 72; Alberts v. State of California, 354 U.S. 476, 478, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

In reviewing the New York censorship of "Lady Chatterley's Lover", the Supreme Court of the United States has recently reaffirmed its position that in determining whether a particular picture is entitled to the protection of expression under the Fourteenth Amendment, the Court may exercise its judicial function which inheres in the very nature of the judicial enforcement of the Due Process Clause.

It reversed the Court of Appeals in New York which sustained the New York censorship. 4 N.Y.2d 349, 175 N.Y.S.2d 39, 151 N.E.2d 197. In that case the censors and the New York Court held that the picture "Lady Chatterley's Lover" portrays "adultery as a desirable and proper pattern of behavior" and "because its subject matter is adultery presented as being right and desirable for certain people under certain circumstances" contrary to the moral standards, the religious precepts and the legal code

of the New York citizenry. Kingsley International Pictures Corporation v. Regents of the University of the State of New York, 79 S.Ct. 1362.

In Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098, the Supreme Court held that expression by means of motion pictures is included within the free speech and free press guarantee of the First and Fourteenth Amendments.

I do not regard this film "Anatomy of a Murder" as depicting anything that could reasonably be termed obscene or corruptive of the public morals and find that the censorship exceeded constitutional bounds.

I direct the defendants to issue to plaintiff forthwith the required permit and enjoin said defendants from preventing the exhibition of "Anatomy of a Murder" in the City of Chicago.